IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 4, 2019

## STATE OF TENNESSEE v. TONY F. BOYLE

**Appeal from the Circuit Court for Madison County**
**No. 18-700    Roy B. Morgan, Jr., Judge**

_____

### No. W2019-00128-CCA-R3-CD

_____


Following a trial, a Madison County jury convicted Defendant, Tony F. Boyle, of driving under the influence (DUI). The trial court imposed a sentence of eleven months and twenty-nine days, which was suspended to community corrections supervision following the service of thirty days in jail. On appeal, Defendant contends that the evidence presented at trial was insufficient to support his conviction. Following a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

George Morton Googe, District Public Defender, and Jeremy B. Epperson, Assistant District Public Defender, Jackson, Tennessee, for the appellant, Tony F. Boyle.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Eric Wood, Assistant District Attorney General, for the appellee, State of Tennessee.


## OPINION

### Factual and Procedural Background

*State's Proof*

Officer Kenneth Shell of the Jackson Police Department testified that he was on patrol on the evening of November 24, 2017, when he was dispatched to the area of

Carruthers Drive and Scallion Street in Madison County. The dispatcher advised that an eighteen-wheel truck struck a fire hydrant and was blocking the intersection. Officer Shell recalled that, when he arrived, he saw that the truck's trailer was "kind of caddy-corner between the two streets . . . and water [was] everywhere from the fire hydrant." Officer Shell spoke to the driver of the truck, Defendant, who was still sitting in the driver's seat. Officer Shell testified that Defendant smelled of alcohol and that his speech was slurred. Officer Shell asked for Defendant's driver's license and noticed that Defendant had trouble locating the license. Defendant kept going between his wallet and some paperwork, and Officer Shell had to ask Defendant several times for his driver's license.

After Defendant located his driver's license and provided it to Officer Shell, Officer Shell asked Defendant to get out of the truck. When Defendant complied, Officer Shell noticed that Defendant was unstable on his feet. Defendant told Officer Shell that he was coming from a relative's house and was trying to get back out on the road for work. Officer Shell testified that Defendant had been unable to make the turn at the intersection. Officer Shell explained that once additional officers arrived, he began directing traffic, and he called a tow company. Officer Shell agreed that he did not see any alcohol in the truck.

Officer William Lewis of the Jackson Police Department testified that he had training in DUI enforcement, including "one solid week in the academy for standardized field sobriety tests[.]" He recalled that, on November 24, 2017, he was on patrol when he was dispatched to the intersection of Scallion and Carruthers around 5:50 p.m. When he arrived, Officer Lewis spoke to Officer Shell, who reported that Defendant's speech was slurred. Officer Lewis approached Defendant, who was still sitting in the driver's seat. Officer Lewis could smell an odor of alcohol coming from inside the truck and noted that Defendant spoke with slurred speech. Officer Lewis stated that he wore a body camera during his interaction with Defendant that evening; he identified a DVD containing the body camera footage, and it was admitted as an exhibit to his testimony.

Officer Lewis found a flat area near the passenger side of the truck to conduct field sobriety tests. Officer Lewis asked Defendant to get out of the truck to perform the tests. Officer Lewis testified that Defendant had problems following his instructions and that he had to repeat instructions several times. Officer Lewis first instructed Defendant to put his arms to his sides, but Defendant put his hands in his pockets. Officer Lewis asked Defendant to stare at and follow the tip of his finger with just his eyes. Officer Lewis recalled, however, that Defendant would not follow his finger and that Defendant turned his head from side to side. Officer Lewis attempted the test several times, but Defendant was unable to follow his instructions, indicating impairment.

Officer Lewis next had Defendant perform the walk-and-turn test. He explained the test to Defendant and demonstrated how the test should be completed. Officer Lewis asked Defendant if he understood, and "[Defendant] said yes, but then . . . he got argumentative with [Officer Lewis]." Officer Lewis explained that Defendant failed the walk-and-turn test. Defendant failed to walk heel to toe as instructed. Officer Lewis stated that Defendant was unsteady on his feet and had to use his arms for balance. Defendant began the test before Officer Lewis finished the demonstration; Defendant stepped off the line and failed to turn around as instructed. Additionally, Defendant could not count to nine. Officer Lewis testified, "So every . . . indicator, every clue that I have of impairment that I'm able to use off this test, [Defendant] hit every clue." He stated that Defendant's performance on the test indicated impairment.

Officer Lewis explained that the third test he utilized was the one-leg stand. He explained the test to Defendant several times, but Defendant had problems understanding his instructions. Officer Lewis stated that he could not conduct the test because Defendant was "being very argumentative[,]" and Officer Lewis believed that Defendant was "stalling on the test." Officer Lewis testified that Defendant was "very intoxicated[,]" and he placed Defendant under arrest for DUI at that time. Officer Lewis then read the Tennessee Implied Consent advisement to Defendant, but Defendant refused to submit a blood or breath sample for testing. He also refused to sign the implied consent form.

On cross-examination, Officer Lewis agreed that he told Defendant he thought Defendant was driving under the influence before any field sobriety tests were conducted. He also agreed that he told Defendant he was "going to jail" if Defendant did not perform the field sobriety tests. He acknowledged that officers found no alcohol in Defendant's truck.

*Defendant's Proof*

Defendant testified that, on November 24, 2017, he was going to his aunt's house for Thanksgiving dinner. Regarding the accident, Defendant stated:

> I was coming to the street, and the turn was just too sharp, and I had to make what's called a buttonhole turn to get into the street, and as I was making the buttonhole onto the street, I didn't make it wide enough and I hit the sidewalk, a curb, and the mud that was inside the curb got my tire stuck. I couldn't get out. So [I] tried to several times to get out and just couldn't get out.

Defendant explained that he had not been able to take a shower for three days and that what the officers smelled was body odor, not alcohol. Defendant stated that he was not able to properly perform the field sobriety tests because he was tired and was "being threatened." He stated that he was tired because he had just driven 600 miles from Mesquite, Texas, to Tennessee. Defendant said that Officer Lewis harassed him and made him nervous by shining a flashlight in his face. He explained that Officer Lewis told him that he was "going to jail anyway" and for Defendant to "shut [his] mouth." Defendant claimed that Officer Lewis also threatened him by saying, "[M]e and you." Defendant agreed, however, that this statement did not appear on the footage from Officer Lewis' body camera. Defendant claimed that the footage had been edited "to make [the] Jackson Police Department look good." Defendant denied drinking or taking any illegal drugs that day. He explained that he took prescribed medication but stated that it did not affect his ability to drive.

Following deliberations, the jury found Defendant guilty of DUI. This timely appeal follows.

## Analysis

Defendant contends that the evidence presented at trial was insufficient to support the jury's verdict. Defendant argues that the odor coming from him the night of his arrest was not alcohol but body odor; that no alcoholic beverages were found on his person or in his truck; that Officer Lewis had predetermined that he was intoxicated prior to conducting any field sobriety tests; and that his inability to perform the tests was due to being "fatigued and threatened." Accordingly, Defendant asserts that a reasonable juror could not have found him guilty of DUI beyond a reasonable doubt. The State responds that the evidence is sufficient to support Defendant's conviction for DUI. We agree with the State.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

As charged in this case,

It is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways of the state . . . while:

(1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess[.]

Tenn. Code Ann. § 55-10-401(1) (2017).

While a refusal to submit to a breath or blood test for determining the alcohol or drug content of a person's blood is not dispositive as to a person's guilt, it may properly be considered by a jury in determining whether the person is guilty of driving under the influence of alcohol or drugs. *State v. Smith*, 681 S.W.2d 569, 570 (Tenn. Crim. App. 1984).

When viewed in the light most favorable to the State, the evidence establishes that Defendant was driving a motor vehicle on a public road while being under the influence of an intoxicant that impaired Defendant's ability to safely operate a motor vehicle. *See* Tenn. Code Ann. § 55-10-401(1). Defendant acknowledged that he was driving his tractor-trailer truck when he ran over a fire hydrant at the intersection of Carruthers and Scallion streets. Both Officer Shell and Officer Lewis testified that Defendant smelled of alcohol, that his speech was slurred, and that he was unstable on his feet. Defendant asserts that the smell was body odor, but the jury was entitled to accredit the officers' testimony over Defendant's and could reasonably conclude that the officers correctly identified the smell of alcohol. Officer Lewis also testified that Defendant had problems following his instructions for the field sobriety tests and that he had to repeat instructions several times. Officer Lewis stated that Defendant's performance on the walk-and-turn

- 5 -

test indicated impairment and that Defendant was too combative to complete the one-leg stand. The jury saw the video of Officer Lewis' interaction with Defendant, including the field sobriety tests, and the video confirms Officer Lewis' testimony that Defendant was unable to properly perform the tests. Defendant's refusal to give a blood or breath sample further supported an inference of Defendant's guilt. *See Smith*, 681 S.W.2d at 570. Defendant's arguments on appeal essentially ask this court to reweigh or reevaluate the evidence, which we cannot do. *See Bland*, 958 S.W.2d at 659. Defendant is not entitled to relief.

## Conclusion

For the aforementioned reasons, we affirm the judgment of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE